THE STATE, EX REL. CHARLES H. SKIRM, COLLECTOR OF MERCER COUNTY, v. WILLIAM H. COX, COLLECTOR OF EWING TOWNSHIP.

The board of assessors in apportioning the state and school tax among the several townships in a county, must distribute it according to the value of the property, after deducting debts, as shown by the duplicates of the assessors of the several townships of the then present year, and not of the preceding year.

On application for *mandamus*.

The state of the case, as agreed upon by the counsel for the respective parties, presents the following facts:

The board of assessors of Mercer county, for the year 1875, met at the time and place designated by the law, with their several duplicates. The county collector presented a statement of the amount of state and school tax apportioned and sent down by the state comptroller, pursuant to law. *Laws*, 1875, *p.* 81.

The board of assessors, in making the apportionment of taxes to the several townships, charged to each township the one and one-half mills state tax and the two mills school tax, on the abstract of ratables of the year 1874. The proportion of the tax of Ewing township, by that method of apportionment, was the sum of $4461.20.

Ewing township claims that the apportionment should have been made to the several townships in proportion to the ratables of the year 1875. By that method of apportionment it is admitted that her portion would have been $149.47 less. She refuses to pay over that sum to the county collector. To compel the payment of that sum this writ is prayed. It is agreed that if the court is of opinion that the board of assessors were bound to apportion the state and school tax, or either of them, among the several townships, according to the abstract of 1874, and that the collector of Ewing is bound to pay to the county collector that amount, then the *mandamus* to be made peremptory, otherwise the rule to be discharged.

Argued at November Term, 1875, before Justices KNAPP and REED.

For the relator, *G. A. Anderson.*

For the defendants, *W. D. Holt.*

The opinion of the court was delivered by

REED, J. The method of ascertaining the amount of taxes to be collected in the year 1875 for state expenditures, is designated by the act of April 8th, (*Laws*, 1875, *p.* 80,) and for ascertaining the amount of taxes for maintaining public schools, by act of March 27th, 1874. *Revision*, 1874, *p.* 786, § 77.

For the purpose of the state expenditures one and a-half mills, and for school purposes two mills "shall be assessed, levied and collected on the inhabitants of this state, and upon the taxable real and personal property therein, as exhibited by the last abstract of ratables from the several counties, made out by the several boards of assessors and filed in the office of the comptroller of the treasury."

It is the duty of the comptroller to apportion the said tax, and, at the rate aforesaid, among the several counties, in proportion to the amount of taxable real and personal estate of said counties respectively, as shown by the abstracts respectively, as aforesaid.

He is to transmit to the county collector of each county, on or before the 1st day of May, a statement of the amount apportioned to said county. The county collector is to lay the said statement before the board of assessors at their next meeting.

The provision for the meeting of the assessors, is found in the tax act. *Nix. Dig.* 938, *pl.* 3, *and* 94, 95.

It is the duty of the board, at their next meeting, to break up the amount, as stated by the comptroller, among the several townships.

Are they to make the apportionment by levying the one and a-half and two mill tax respectively upon the property of each township, as exhibited by the abstract of ratables of 1874? I clearly think not.

Although the two acts speak of levying this state and school tax of a certain per cent. upon the real and personal property of the state, as exhibited by the last abstract, *i. e.* the abstract of 1874—it means when construed with the other portions of the same acts, and with the general tax law, that an amount

shall be levied equivalent to the said per cent. upon said property.

That it shall be broken up among the counties by the comptroller, according to the abstract of 1874. But when the county comes to distribute it among the townships, a different rule must prevail.

The school law (§ 77) says, that the school tax is to be assessed and collected at the same time, and in the same manner as the state tax. The state tax of one and a-half mills is to be assessed and collected in accordance with the general tax law. *Laws*, 1875, *p*. 81.

By section ninety-four of that law (*Nix. Dig.* 953) it is provided that when any money shall be directed to be assessed for state or county purposes, it shall be the duty of the assessors to meet, and for each assessor to produce his duplicate of the value of real and personal property by him assessed, &c.

By section ninety-five they are to ascertain the whole amount of taxable property after deduction of debts, and shall fix and adjust the proportion or quota of tax to be levied and collected in each township and ward, in proportion to said value.

It is perceived that the only evidence the board has before them is the duplicate of taxable property for the then present year.

They meet for the express purpose of apportioning both state and county taxes. The abstract of the previous year is not before them. It is on file in the comptroller's office, and in the hands of the several collectors of the preceding year.

There is no standard of apportionment contemplated by the law, except the value of the property as shown by their duplicates, which the law requires to be produced for that purpose.

The method of apportionment as adopted by the board of assessors was, therefore, erroneous.

Upon reaching this result by the agreement of counsel, the application for the writ of *mandamus* is denied.